1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

GARY A. REMING and PATRICIA A.
REMING,

11

            Plaintiffs,

12

      v.

13

HOLLAND AMERICA LINE INC., *et al.*,

14

            Defendants.

Case No.  C11-1609RSL

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

15

16

## I.  INTRODUCTION

17

18

19

20

        This matter comes before the Court on a motion for summary judgment (Dkt. # 63) filed

by Defendants Holland America Line Inc., Holland America Line N.V., HAL Antillen N.V., and

HAL Nederland N.V. (collectively "HAL") and HAL's motion to attach declarations to its reply

in support of its motion for summary judgment (Dkt. # 87).

21

22

23

24

25

26

        This case arises out of an accident that occurred while Plaintiff Gary Reming was

participating in city tour excursion during a cruise.  In September 2011, Plaintiffs filed a

complaint against HAL, alleging claims of negligence and deceit.  Compl. (Dkt. # 1).  In March

2012, following the Court's entry of the parties' stipulation and order granting leave to amend

the complaint, Plaintiffs filed an amended complaint adding Tropical Tours SA DE CV, the

excursion operator, as a defendant.  First Am. Compl. (Dkt. # 28).  After attempting to serve

27

28

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 1

1  Tropical Tours SA DE CV in Mexico for more than eight months, Plaintiffs learned that the

2  correct name of the excursion operator is Tropical Tours Baja Cabo S.A. DE C.V. ("Tropical

3  Tours"). Order (Dkt. # 98). The Court recently granted Plaintiffs' request for leave to amend

4  the complaint to change the name of the excursion operator. Order (Dkt. # 104). Tropical Tours

5  has not been served.

6      Having reviewed the memoranda, declarations, and exhibits submitted by the Court finds

7  as follows:[1]

8                              **II. DISCUSSION**

9  **A. Factual Background**

10     In late November 2010, Gary and Patricia Reming took a HAL cruise from San Diego,

11  California, to Mexico. Sec. Am. Compl. (Dkt. # 43) ¶¶ 19-20. About one month before their

12  departure, Plaintiffs and their travel agent received email notifications that Plaintiffs' HAL

13  Express Documents were ready for viewing and printing. See Kidd Decl. (Dkt. # 66), ¶ 3, Ex. 1.

14  These documents included Plaintiffs' boarding passes and the Terms and Conditions of Passage

15  Contract ("Cruise Contract"). Before HAL passengers can print their boarding passes, they must

16  complete the online check-in and accept the terms and conditions of the Cruise Contract. Id. ¶ 6.

17  The online check-in system prohibits passengers from printing their boarding passes unless they

18  have checked a box indicating that they have read and agreed to the Cruise Contract terms. Id.

19  ¶¶ 10-11. Plaintiffs' travel agent accepted the terms and conditions for them on October 14,

20  2010. Id. ¶ 4, Ex. 2.

21     The first page of the Cruise Contract states "NOTICE: YOUR ATTENTION IS

22  ESPECIALLY DIRECTED TO CLAUSES A.1, A.3, A.4, A.5, A.6, A.7, A.9 and C.4 BELOW,

23

24     [1] After HAL filed its reply in support of summary judgment, HAL filed a motion to attach the
25  declarations of Eleazar Alcaraz Jiminez, the independent contractor who provided the tour to Plaintiffs
   in November 2010, and Alonso Garate, Tropical Tours' Accounting Manager at the time of Plaintiffs'
26  tour. Motion to Attach (Dkt. # 87). Plaintiffs did not respond to HAL's motion. The Court considers
   Plaintiffs' failure to respond as an admission that the motion has merit. See LCR 7(b)(2). The Court
27  GRANTS Defendants' motion and has considered the declarations.

1  WHICH CONTAIN IMPORTANT LIMITATIONS ON YOUR RIGHT TO ASSERT CLAIMS

2  AGAINST US AND CERTAIN THIRD PARTIES." Id. ¶ 5, Ex. 3.  Clause A.4 provides that

> [a]s to your Cruisetour and HAL Land Trips, certain transportation will be provided using equipment owned or operated by us.  All other transportation, shore excursions, accommodations and services in the air and on shore (referred to as"Non-HAL Services") are performed by third parties who are independent contractors, and not by us.  By way of example only, Non-HAL Services include goods and services provided by shoreside physicians, air ambulance, hotels, restaurants, airlines (including the airline(s) used in any HAL Air Package), railroads, tour operators (other than us), helicopter operators, amusement park operators, dayboat operators, and motorcoach operators.  As a result, you are assuming the entire risk of utilizing Non-HAL Services subject only to whatever terms or arrangements are made by you or on your behalf with the third party furnishing the Non-HAL Service.  Money received in respect of Non-HAL Services by us is received only as an independent contractor, to be paid to the third party (less retained commission, if any).

Id.

Before embarking on the cruise, Ms. Reming reviewed a list of excursions on HAL's website. Rogers Decl. (Dkt. # 74) ¶ 4, Ex. 3 at 47.  Once on the cruise, both Plaintiffs browsed brochures and watched parts of a video presenting the different excursion options.  Shields Decl. (Dkt. # 64) ¶¶ 2-3, Ex. 1, Ex. 2;  Rogers Decl. ¶¶ 3-4, Ex. 2 at 18-19, Ex. 3 at 8, 53-54.  During the video, a screen appeared that informs passengers that the tours offered at ports of call are operated by independent contractors, not by HAL.  Shields Decl. ¶¶ 2-3, Ex. 1, Ex. 2.  Although Plaintiffs watched the video about excursions, neither one recalls seeing the warning screen. Plaintiffs did not discuss the excursions with any HAL employees, but they decided to purchase tickets for a bus tour of Mazatlan, Mexico.  Rogers Decl. ¶¶ 3-4, Ex 2 at 18-19, Ex. 3 at 53-54. At the time, Ms. Reming did not ask or consider whether the tour was operated by HAL and Mr. Reming assumed that it was operated by a separate entity.  Rogers Decl. ¶¶ 3-4, Ex. 2 at 23, 3 at 49-50.

On November 30, 2010, Plaintiffs departed the ship and boarded a bus for the Mazatlan city tour.  Id. ¶ 3, Ex. 2 at 21.  During the tour, the bus made several stops at local tourist attractions.  Id. at 22.  When the tour bus stopped at Cliff Diver's Plaza, Mr. Reming got off the bus with the other passengers to take a few pictures.  He tried to avoid the crowd on the sidewalk

1   and  stepped off the curb, onto a paved parking lot.  Id. at 25-26.  As he began to walk around

2   the crowd, an unknown person instructed him to step back.  Id. at 33-34.  Mr. Reming took a few

3   steps backward and suddenly, the pavement collapsed beneath him and he fell into a sinkhole.

4   Id. at 34.

5   **B.  Legal Standard on Summary Judgment**

6          Summary judgment is appropriate when, viewing the facts in the light most favorable to

7   the nonmoving party, the record shows that "there is no genuine dispute as to any material fact

8   and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party

9   seeking summary dismissal of the case "bears the initial responsibility of informing the district

10  court of the basis for its motion," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and

11  identifying those portions of the materials in the record that show the absence of a genuine issue

12  of fact, Fed. R. Civ. P. 56(c)(1).  Once the moving party has satisfied its burden, it is entitled to

13  summary judgment if the non-moving party fails to designate "specific facts showing that there

14  is a genuine issue for trial."  Celotex Corp., 477 U.S. at 324.  "The mere existence of a scintilla

15  of evidence in support of the non-moving party's position is not sufficient."  Triton Energy

16  Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  "[S]ummary judgment should be

17  granted where the nonmoving party fails to offer evidence from which a reasonable jury could

18  return a verdict in its favor."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

19  626, 631 (9th Cir. 1987).

20  **C.  Analysis**

21         As a preliminary matter, the parties dispute whether maritime law or Washington State

22  law provides the requisite standard of care for the negligence claims.  Plaintiffs contend that

23  Washington's higher standard of care, not maritime law, applies because HAL's allegedly

24  negligent conduct did not take place on the cruise ship.  Response (Dkt. # 73) at 18-20.  The

25  Court disagrees.  "It is a settled principle of maritime law that a shipowner owes the duty of

26  exercising reasonable care towards those lawfully aboard the vessel who are not members of the

27

28  ORDER GRANTING MOTION
    FOR SUMMARY JUDGMENT - 4

1   crew." <u>Kermarec v. Compagnie Generale Transatlantique</u>, 358 U.S. 625, 630 (1959).  Contrary

2   to Plaintiffs' argument, several courts have applied this standard to negligence claims related to

3   injuries that have occurred on a variety of cruise ship excursions.  <u>E.g.</u>, <u>Samuels v. Holland</u>

4   <u>American Line-USA Inc.</u>, 656 F.3d 948, 953 (9th Cir. 2011) (applying standard to claims related

5   to injuries sustained while swimming in Pacific Ocean during excursion); <u>Balaschak v. Royal</u>

6   <u>Caribbean Cruises, Ltd.</u>, 2009 WL 8659594, at *3-5 (S.D. Fla. Sept. 14, 2009) (applying

7   standard to negligence claims related to injuries from car accident during an excursion); <u>Isbell v.</u>

8   <u>Carnival Corp.</u>, 462 F.Supp.2d 1232, 1237 (S.D. Fla. 2006) (applying standard to claims related

9   to injuries sustained during excursion in rainforest).  The Court finds that the reasonable care

10   standard pronounced in <u>Kermarec</u> applies to Plaintiff's negligence claims.

11   **D.  Negligence**

12       To succeed on their negligence claims, Plaintiffs must show that (1) HAL owed them a

13   duty of care; (2) HAL breached that duty; (3) Plaintiffs were injured; and (4) HAL's breach was

14   the proximate cause of the injuries.  <u>Samuels</u>, 656 F.3d at 953.

15       **1.  Cruise Contract Disclaimer**

16       A cruise line passage contract is a maritime contract governed by federal maritime law.

17   <u>Wallis v. Princess Cruises</u>, 306 F.3d 827, 834 (9th Cir. 2002).  Under 26 U.S.C. § 30509

18   (formerly codified at 46 App. U.S.C. § 183c), a passenger vessel may not contractually limit its

19   liability for its own negligence, 46 U.S.C. § 30509(a)(1), and any provision in a passenger

20   contract that attempts to limit the carrier's liability for its own negligence is deemed void, <u>id.</u> §

21   30509(a)(2).  This section applies to cruise ship companies that attempt to limit their liability for

22   injuries to passengers due to their own negligence.  <u>Kornberg v. Carnival Cruise Lines, Inc.</u>, 741

23   F.2d 1332, 1335-36 (11th Cir. 1984); <u>Smolnikar v. Royal Caribbean Cruises Ltd.</u>, 787 F.Supp.2d

24   1308, 1315-17 (S.D.Fla. 2011) (listing cases).  However, courts have enforced limited liability

25   provisions of passenger contracts where passengers attempt to hold the cruise ship company

26   vicariously liable for the negligence of an independent excursion operator.  <u>E.g.</u>, <u>Henderson v.</u>

27

28   ORDER GRANTING MOTION
<br>       FOR SUMMARY JUDGMENT - 5

1   <u>Carnival Corp.</u>, 125 F.Supp.2d 1375, 1377 (S.D. Fla. 2000) (enforcing ticket contract provision

2   limiting liability against plaintiff's negligence claim for injuries sustained during catamaran

3   excursion operated by independent party); <u>Dubret v. HAL Line Westours, Inc.</u>, 25 F.Supp.2d

4   1151, 1153-54 (W.D. Wash. 1998) (enforcing limited liability provision against claims related to

5   injuries sustained in a bus accident during an excursion); <u>see also</u> <u>Smolnikar</u>, 787 F.Supp.2d at

6   1318.

7        Although this action arises out of injuries allegedly sustained during an off ship excursion

8   operated by Tropical Tours, Plaintiffs contend that HAL itself was negligent in failing to provide

9   for the safety of passengers during the excursion, failing to warn of dangerous conditions at Cliff

10  Diver's Plaza, and failing to properly select, train, and supervise Tropical Tours.  Compl. ¶¶ 30-

11  31, 56-61.  The Court finds that to the extent the disclaimers in the Cruise Contract and video

12  attempt to disclaim liability for HAL's own negligence relating to injuries sustained by Mr.

13  Reming during the Tropical Tours city tour, the disclaimers are void under Section 30509(a).

14       With regard to Plaintiff's claims that HAL is vicariously liable for Tropical Tour's

15  negligence, the Ninth Circuit employs a two prong "reasonable communicativeness" test to

16  determine when the passenger of a common carrier is contractually bound by a cruise ticket

17  contract.  <u>Wallis</u>, 306 F.3d at 835.  The first prong focuses on the physical characteristics of the

18  ticket.  <u>Id.</u>  At this stage, courts examine "features such as size of type, conspicuousness and

19  clarity of notice on the face of the ticket, and the ease with which a passenger can read the

20  provisions in question."  <u>Diero v. Am. Airlines, Inc.</u>, 816 F.2d 1360, 1364 (9th Cir. 1987).  The

21  Court finds the relevant contractual limitations in this case are conspicuous.  The first page of

22  the Cruise Contract states "ISSUED SUBJECT TO THE IMPORTANT TERMS AND

23  CONDITIONS ON THIS PAGE AND THE FOLLOWING PAGES.  READ TERMS AND

24  CONDITIONS CAREFULLY BEFORE ACCEPTING."  Kidd Decl. ¶ 4, Ex. 2.  Similarly, the

25  first page alerts the reader that "THIS DOCUMENT IS A LEGALLY BINDING CONTRACT

26  BETWEEN YOU AND US...NOTICE:  YOUR ATTENTION IS ESPECIALLY DIRECTED

27

28  ORDER GRANTING MOTION
    FOR SUMMARY JUDGMENT - 6

1   TO CLAUSES A.1, A.3, A.4, A.5, A.6, A.7, A.9 and C.4 BELOW, WHICH CONTAIN

2   IMPORTANT LIMITATIONS ON YOUR RIGHT TO ASSERT CLAIMS AGAINST US AND

3   CERTAIN THIRD PARTIES."  Kidd Decl. ¶ 5, Ex. 3.  Clause A.4 distinguishes between "HAL

4   Land Trips" and "[a]ll other...shore excursions...performed by third parties who are independent

5   contractors."  <u>Id.</u>  The Court finds, as the Ninth Circuit has found in a similar case, the Cruise

6   Contract's features provide reasonable notice that contractual terms are contained therein.  <u>See</u>

7   <u>Wallis</u>, 306 F.3d at 836.

8           The second prong of the reasonable communicativeness test requires that courts consider

9   "the circumstances surrounding the passenger's purchase and subsequent retention of the

10  ticket/contract."  <u>Deiro</u>, 816 F.2d at 1364.  These circumstances include the passenger's

11  familiarity with the ticket, the time and incentive to study the provisions of the ticket, and any

12  other notice that the passenger received outside of the ticket. <u>Id.</u>  Here, Plaintiffs are experienced

13  cruise passengers.  They have taken more than 10 cruises, several of which were operated by

14  HAL.  Arundell Decl. (Dkt. # 65) ¶ 1, Ex. 2 at 5-6.  Plaintiffs received the Cruise Contract more

15  than one month before boarding the ship and therefore, had ample opportunity to review the

16  terms of the contract.  <u>See</u> Kidd Decl. ¶ 3, Ex. 1.  Plaintiffs do not contend that they never

17  received the contract, but argue instead that the limited liability provision was not reasonably

18  well communicated because they did not read the contract before or during their cruise.

19  Response at 11-12.  Plaintiffs' decisions not to read the Cruise Contract does not preclude them

20  from being bound by its terms.  <u>Racca v. Celebrity Cruises, Inc.</u>, 376 Fed. Appx. 929, 931 (11th

21  Cir. 2010) (affirming district court's decision binding passenger to cruise contract where

22  passenger did not dispute that he received the ticket contract); <u>Kendall v. American Hawaii</u>

23  <u>Cruises</u>, 704 F.Supp. 1010, 1016 (D.Haw. 1989).

24          Cruise contract clauses are also "subject to judicial scrutiny for fundamental fairness."

25  <u>Oltman v. HAL Line, Inc.</u>, 538 F.3d 1271, 1277 (9th Cir. 2008) (quoting <u>Carnival Cruise Lines,</u>

26  <u>Inc. v. Shute</u>, 499 U.S. 585, 595 (1991)).  The focus is whether the pertinent clause was included

27

28  ORDER GRANTING MOTION
    FOR SUMMARY JUDGMENT - 7

1   in the contract based on a "bad-faith motive."  Id.  There is no indication that HAL acted in bad
2   faith by including a contractual clause disclaiming liability for injuries due to the negligent acts
3   of independent contractors, people over whom HAL has no control.

4           The Court finds the disclaimer of liability for injuries sustained as a result of an
5   independent contractor's negligence was reasonably communicated to Plaintiffs and is
6   fundamentally fair.  Therefore, HAL is not liable for injuries resulting from Tropical Tours'
7   negligence.

8           **2.  Duty to Warn.**

9           "Where the condition constituting the basis of the plaintiff's claim is not unique to the
10  maritime context, a carrier must have 'actual or constructive notice of the risk-creating
11  condition" before it can be held liable.'"  Samuels, 656 F.3d at 953 (quoting Keefe v. Bahama
12  Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989)).  Mr. Reming's injury occurred while
13  he was walking pavement, an activity that is not uniquely associated with maritime travel.
14  Therefore, Plaintiffs must show that HAL had actual or constructive notice of a dangerous
15  condition at Cliff Diver's Plaza.

16          Plaintiffs contend HAL had constructive knowledge of the plaza's danger because a
17  Mazatlan newspaper, Noroeste, published two articles about the deterioration of Mazatlan's
18  plazas.  They rely on Pittsburgh Corning Corp. v. Walters, 1 S.W.3d 759 (Tex. Ct. of App. 1999)
19  to support their position that these articles were sufficient to place HAL on notice.  Response at
20  12.  In Pittsburgh Corning, the Texas appellate court considered a newspaper article in the
21  context of an evidentiary challenge and determined that the defendant had waived its right to
22  object to the admission of the newspaper article by failing to object to its admission at trial.  The
23  court declined to determine whether the admission as appropriate.  Pittsburgh Corning, 1 S.W.3d
24  at 777.  The dicta quoted by Plaintiffs in their opposition refers to the court's earlier, narrow
25  finding that asbestos manufacturers are charged with a duty to know the dangers of asbestos
26  products.  Id.  Pittsburgh Corning, therefore, does not support the broad finding that Plaintiffs

27
28  ORDER GRANTING MOTION
    FOR SUMMARY JUDGMENT - 8

1  seek.

2         The Court finds ample evidence that HAL was not aware of any risks associated with

3  Cliff Diver's Plaza.  HAL monitors U.S. State Department Overseas Advisory Committee

4  reports, the New York Times, MSNBC, and Bloomberg websites for information that may

5  implicate the safety and security of HAL's ports of call.  HAL also receives reports from its

6  parent company, Carnival Corporation, regarding safety risks at different ports.  Wright Decl.

7  (Dkt. # 84) ¶ 2, Ex. 1 at 4-6.  Plaintiffs provide no evidence that any of these sources mentioned

8  safety risks associated with Cliff Diver's Plaza before Mr. Reming's fall.

9         Furthermore, HAL has offered excursions with Tropical Tours in Mazatlan, Mexico, for

10  the past thirty years.  Arundell Decl. ¶ 8.  Before Mr. Reming's accident, HAL had not received

11  any reports of injuries during Tropical Tour's Mazatlan city tour or any complaints or concerns

12  from passengers or employees regarding the sidewalk area at Cliff Diver's Plaza.  Id. ¶ 7.

13  Plaintiffs have provided no evidence that suggests that HAL had any reason to anticipate that a

14  paved parking lot in Mazatlan might collapse.  Based on this record, the Court finds that HAL

15  did not have actual or constructive notice of any risks at Cliff Diver's Plaza and therefore, there

16  was no duty to warn.

17  **3. Joint Venture**

18         Joint ventures are not created by operation of law, but arise by express or implied

19  contract.  Paulson v. Pierce County, 99 Wn.2d 645, 654 (1983).  Under Washington law, the

20  elements of a joint venture are: "(1) an express or implied contract, (2) a common purpose, (3) a

21  community of interest, and (4) an equal right to a voice, accompanied by an equal right to

22  control.  Id. at 654-55.  The key element is an express or implied contract between the parties.

23  Carboneau v. Peterson, 1 Wn.2d 347, 374 (1939).

24         HAL's shore excursion agreement with Tropical Tours does not suggest that Tropical

25  Tours and HAL intended to operate a joint venture.  Rather, the agreement unambiguously

26  provides that Tropical Tours "is an independent contractor and not an agent, partner or joint

27

28  ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 9

venturer of HAL." Arundell Decl. ¶ 14, Ex. 3 at 7. Plaintiffs assert, without providing supporting evidence, that HAL and Tropical Tours "had an understanding as to the sharing of profits and losses...[a]nd they had a right of joint control over the Mazatlan tour because HAL could choose to send its passengers on the tour or not...and Tropical Tours controlled the activities of the passengers on the tour." Response at 13. Even though HAL sells tickets to its passengers for Tropical Tours excursions, including the Mazatlan city tour Plaintiffs took, and retains a larger portion of the ticket fees than Tropical Tours receives, Rogers Decl. ¶ 2, Ex. 1 at 7, 11, that arrangement does not mean that the two parties share profits and losses. <u>Adams v. Johnston</u>, 71 Wn. App. 599, 612 (1993).

Furthermore, HAL has provided evidence that it has no affiliation or ownership interest in Tropical Tours or any control over Tropical Tours' management, assets, finances, or excursion outings. Arundell Decl. ¶¶ 12, 14-15. Plaintiffs have failed to provide any evidence to refute the unambiguous language in the agreement or the evidence that HAL lacks control over Tropical Tours' management or operations. The Court finds no genuine issues of material fact exist regarding whether HAL and Tropical Tours operated a joint venture.

### 4. Selection, Training, Supervision, and Retention

Plaintiffs contend that HAL was negligent in its selection and retention of Tropical Tours as an excursion provider. Compl. ¶¶ 56-61. HAL cannot be held liable under this theory unless Tropical Tours lacked competence in providing city tour excursions and HAL knew or should have known of this deficiency. <u>L.B. Foster Co. v. Hurnblad,</u> 418 F.2d 727, 730 (9th Cir. 1969) (applying Washington law); <u>see also</u> <u>Smolnikar</u>, 787 F.Supp.2d at 1318 (applying similar standard for negligent hiring or retention of independent contractor under Florida law to claim against cruise shop operator). Thus, the relevant inquiry is whether HAL diligently inquired into Tropical Tours' fitness before employing Tropical Tours as an independent contractor and since then.

Although HAL seeks summary dismissal of all of Plaintiffs' claims, HAL has failed to

1    provide any evidence or argument regarding HAL's inquiry into Tropical Tour's competence

2    and fitness as an excursion provider.  Therefore, Plaintiffs' claim regarding HAL's selection and

3    retention of Tropical Tours remains for trial.

4    **E.  Misrepresentation**

5          To establish negligent misrepresentation and deceit, Plaintiffs must prove by clear,

6    cogent, and convincing evidence that HAL provided information that it knew was false,

7    Plaintiffs relied on the false information, and Plaintiffs suffered damages as a result.  <u>See</u>

8    <u>Brummett v. Washington's Lottery</u>, 288 P.3d 48, 54 (2012) (providing elements of deceit); <u>Ross</u>

9    <u>v. Kirner</u>, 162 Wn.2d 493, 499 (2007) (providing elements of negligent misrepresentation).

10         Plaintiffs' misrepresentation claims are based solely on a statement on HAL's website,

11   which Ms. Reming contends she reviewed briefly before boarding the cruise.  Response at 22-

12   23.  Although it is somewhat unclear, Plaintiffs appear to contend that HAL's statement on its

13   excursion website that "Each of our tours provides the highest level of quality, safety,

14   convenience and value" misrepresented 1) that the excursion was operated by HAL and 2) that

15   the excursion was safe. <u>Id.</u>

16         With regard to Plaintiffs' first theory of misrepresentation, Plaintiffs have failed to

17   establish that they relied on the alleged false statement.  Ms. Reming testified that she did not

18   know who operated the city tour and she "didn't think anything about it."  Rogers Decl. ¶ 4, Ex.

19   3 at 49-50.  Similarly, Mr. Reming testified that he assumed the tour was not operated by HAL.

20   Rogers Decl. ¶ 4, Ex. 2 at 23.  Because Plaintiffs failed to raise a genuine issue of material fact

21   regarding this misrepresentation claim, HAL is entitled to summary judgment.

22         Plaintiffs' second claim of misrepresentation is equally unsuccessful.  Plaintiffs have not

23   provided any evidence to suggest the falsity of HAL's general statement that port of call

24   excursions are safe.  As explained above, HAL was not aware that Cliff Diver's Plaza presented

25   any dangers and the fact of Mr. Reming's fall is insufficient to establish that the excursion was

26   not safe.  <u>Wolff v. HAL Lines, Inc.</u>, 2010 WL 234772, at *2 (W.D. Wash. 2010).  "[A] general

27

28   ORDER GRANTING MOTION
     FOR SUMMARY JUDGMENT - 11

1  promise that the trip will be safe and reliable does not constitute a guarantee that no harm will

2  befall plaintiff." Isbell, 462 F.Supp.2d at 1237 (internal quotations omitted).  Furthermore,

3  Plaintiffs have not presented any evidence that the statement was the proximate cause of Mr.

4  Reming's injury.  The Court, therefore, GRANTS HAL's motion for summary judgment and

5  dismisses Plaintiffs' misrepresentation claims.

6  **F.  Loss of Consortium**

7       Finally, HAL seeks dismissal of Mr. Reming's loss of consortium claim.  Motion (Dkt. #

8  63) at 9 n.1.  General maritime law does not recognize a claim for loss of consortium when the

9  injury giving rise to the claim occurred outside of state territorial waters.  Chan v. Soc'y

10  Expeditions, Inc., 39 F.3d 1398, 1407-08 (9th Cir. 1994).  Plaintiffs do not dispute that Mr.

11  Reming's injury occurred outside of state territorial waters.  The Court, therefore, GRANTS

12  HAL's motion and dismisses Ms. Reming's loss of consortium claim.

**III.  CONCLUSION**

14       For all of the foregoing reasons, the Court GRANTS HAL's motion for summary

15  judgment (Dkt. # 63).  Plaintiffs' negligence claims based on vicarious liability, duty to warn,

16  misrepresentation, and joint venture are dismissed with prejudice.  Plaintiffs' claims of deceit

17  and loss of consortium are also dismissed with prejudice.  Plaintiffs' negligent selection,

18  training, supervision, and retention claim remains for trial.

20       DATED this 14th day of February, 2013.

*Robert S. Lasnik*

Robert S. Lasnik
United States District Judge